OPINION OF THE COURT
Paul A. Victor, J.
Relief Sought
Plaintiffs, via an order to show cause served upon the City of New York, seek leave for late filing of a notice of claim nunc pro tunc against the New York City Board of Education and the New York City Department of Education. The defendant, City of New York, cross-moves to dismiss.
A Mea Culpa Opportunity
This motion, made by plaintiffs, presents a platform to remedy, as well as clarify, a prior decision made by this court which erroneously held that, as a result of the enactment of chapter 91 of the Laws of 2002, the City of New York (and not the new hybrid Department/Board of Education) was the proper party defendant for torts allegedly committed on school property by school employees. There were many such prior erroneous decisions; and there are now many pending motions for permission to serve a late notice of claim against the “proper party.”
Relevant Facts and Background
In this case the plaintiffs allege that the infant plaintiff was injured on August 10, 2004 due to defects in a playground slide located at PS 218 in the Bronx. Within 90 days thereof (i.e., on Nov. 4, 2004), the plaintiffs served a notice of claim on the defendant, New York City, by service upon the New York City Comptroller, alleging, among other things, that the City of New York and the Board of Education were negligent in the ownership, operation, maintenance and control of PS 218.
Pursuant to a demand made by the Comptroller a General Municipal Law § 50-h hearing was held on December 29, 2004. In a preaction discovery proceeding the City of New York admitted possession and control of the subject playground slide; and on March 3, 2005 allowed it to be inspected and photographed, and agreed to preserve it. It is significant to also note that, at a deposition, a school custodian testified that he was informed of the accident almost immediately after it happened; that he immediately went with another school employee to inspect the *848 slide; that a school teacher pointed out the defect on the slide which allegedly caused the accident and that he personally removed the defective slide on that date; all of which was corroborated in a report thereafter made by the school custodian.
By letter dated April 3, 2005, the City acknowledged that the claim involved the school board of education; and stated, among other things, that “the City of New York Office of the Comptroller, in an attempt to settle this case will be submitting offers into the cybersettle settlement system.”
Procedural History
An action against the City of New York was commenced by the service of a summons and complaint on April 6, 2005. The City interposed its answer on May 27, 2005 and therein did not deny ownership, maintenance and control of the premises. In its answer the City merely denied knowledge or information concerning ownership, maintenance and control of the premises. Thereafter postaction discovery (including a preliminary conference) was commenced. When the City failed to provide the discovery demanded by the plaintiffs, the plaintiffs moved to compel; and the City cross-moved to dismiss, claiming for the first time that it was not a proper party.
By order and decision dated November 11, 2005, this court denied the defendant’s motion to dismiss relying on the authority of its prior decision in Ocasio v City of New York (NYLJ, Nov. 1, 2005, at 18, col 3), as well as upon Justice Walker’s decision in Perez v City of New York (9 Misc 3d 934 [2005]), each of which held, in essence, that, pursuant to amendments by chapter 91 of the Laws of 2002, the reorganized “Board of Education” was subsumed by a newly created Department of Education of the City of New York; and thus the City of New York was the proper party for actions and claims arising from torts occurring on school property.
By order of the Appellate Division, First Department, dated June 28, 2007, Justice Walker’s decision in Perez (and by implication this court’s decision in Ocasio) was reversed (41 AD3d 378 [1st Dept 2007]).
The plaintiffs now move by order to show cause seeking permission to serve a late notice of claim against the New York City Board of Education and the New York City Department of Education. It is observed that (although the order to show cause requests permission to serve a late notice of claim against the New York City Board of Education and the New York City *849 Department of Education, and the proposed notice of claim which is annexed as an exhibit properly names these entities as proposed defendants) the order to show cause itself names only the City of New York as a defendant, and it was served only upon the City via service upon its attorney, the Corporation Counsel.
The City opposes plaintiffs motion, stating that for both the infant and adult plaintiff, the application is untimely, and the City cross-moves for dismissal of the complaint in its entirety for failure to state a claim upon which relief can be granted.
The Statutory Scheme for Claims Against the Board
The Board of Education Prior to 2002
The Board of Education for the City of New York was created as a public corporate entity which is separate and distinct from the City of New York. (L 1901, ch 466; NY City Charter former § 1062; Gunnison v Board of Educ. of City of New York, 176 NY 11 [1903]; Titusville Iron Co. v City of New York, 207 NY 203, 208 [1912]; Campbell v City of New York, 203 AD2d 504 [2d Dept 1994].) Consequently, it has long been held that no relation of principal and agent exists between the Board and the City, and therefore the City is not liable for torts committed by the Board or its employees. (Ham v Mayor of City of N.Y., 70 NY 459 [1877]; Titusville Iron Co. v City of New York, 207 NY at 208.) Thus it was held that the City of New York is clearly not a proper party to any proceedings arising out of alleged torts committed on school property by the Board of Education or its employees (Matter of Divisich v Marshall, 281 NY 170, 173 [1939]; Campbell v City of New York, 203 AD2d 504 [1994]; Cruz v City of New York, 288 AD2d 250 [2d Dept 2001]; Goldman v City of New York, 287 AD2d 689 [2d Dept 2001]), despite the fact that the City is the title fee owner of said property (NY City Charter § 521).
Section 521 of the New York City Charter provides in relevant part that “[t]he title to all property . . . heretofore or hereafter acquired for school educational purposes . . . shall be vested in the city, but under the care and control of the board of education . . . [and s]uits in relation to such property shall be brought in the name of the board of education.” (Emphasis added.)
Therefore, pursuant to the statutory scheme in place prior to the 2002 amendment to the Education Law, it was clearly required, as a precondition to an action against the Board of Education, that a notice of claim and all process be served upon *850 the Board at its designated location at 65 Court Street, Brooklyn, New York, in compliance with the requirements of the General Municipal Law and Education Law (see General Municipal Law § 50-e [3] [a]; § 50-i [1]; Education Law §§ 2562, 3813).[1]
The New Department of Education
By chapter 91 of the Laws of 2002, the Education Law was amended so as to radically restructure the governance of the school district of the City of New York. The amendment provided, among other things, that the Mayor of New York was empowered to appoint a Chancellor who would preside over a Board of Education which was to be expanded from 7 to 13 members, the majority of which were also to be appointed by the Mayor of the City of New' York. Five Board members are selected by the Borough Presidents.
Although that legislation itself made no specific reference to a “Department of Education of the City of New York,” the bylaws subsequently adopted by the Board provide that this 13-member body “shall be known as the Panel for Educational Policy,” *851 which together with the Chancellor and other school employees is designated as the “Department of Education of the City of New York.”[2] To add to the emphasis upon mayoral control, an official notice regarding an agent for service upon this newly created hybrid “Department” was published in the New York Law Journal on November 12, 2002:
“NEW COURT NOTICE
“New York City Law Department as agent for service for the New York City Department or Board of Education.
“Effective Monday, November 4, 2002, the New York City Law Department has been authorized as the agent and sole representative for the New York City Department or Board of Education upon whom (1) notices of claim against the New York City Department or Board of Education shall be served, and (2) service of process and litigation papers in actions or proceedings against the New York City Department or Board of Education shall be made. As of November 4, 2002, such documents shall be served on the New York City Law Department at 100 Church Street (fourth floor), New York, New York, between 8:00 a.m. and 6:00 p.m., Monday through Friday. The New York City Department or Board of Education will no longer accept service of notices of claim, process, or litigation papers at the Board of Review at 65 Court Street, Brooklyn. Any subpoena duces tecum, however, should be served upon the New York City Department of Education at its offices at 52 Chambers Street (first floor), New York, New York. A subpoena seeking the testimony of an individual must be served upon the individual in accordance with the relevant provisions of the Civil *852 Practice Law and Rules.” (NYLJ, Nov. 4, 2002, at 37, col 3 [emphasis added].)
The above-referenced “Law Department” in the above “New Court Notice” is, of course, a unit within the office of the Corporation Counsel for the City of New York. Thus, since CPLR 311 (a) (2) provides that personal service “upon the city of New York [shall be made] to the corporation counsel or to any person designated to receive process in a writing filed in the office of the clerk of New York County,” it appears that both the City and the Board now share the same agent and representative for service. This is also apparent from, and consistent with, General Municipal Law § 50-e (3) (a) which provides, with reference to service of a notice of claim, that
“[t]he notice shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, or to an attorney regularly engaged in representing such public corporation.” (Emphasis added.)
Clearly, therefore, since the City of New York and this hybrid Department/Board of Education are represented by the same attorney, they each share the identical authorized and/or designated agent for service of process.
In combination, the wholesale transfer of power to the Mayor of the City of New York, together with the bylaws’ reference to the “Department of Education of the City of New York,” and the designation of the City’s attorney (the Corporation Counsel) as the agent and sole representative for this new hybrid entity made it reasonable to assume that this newly created “Department of Education of the City of New York” was another mayoral agency (such as the Police Department) answerable to the City of New York, which could be held responsible for torts committed by that agency. At least, that is the way it appeared to Justice Walker (Perez, supra) and this court (Ocasio, supra) and to many of our colleagues. (See e.g. Nasser v Nakhbo, 13 Misc 3d 1223[A], 2006 NY Slip Op 51961[U] [2006]; Williams v City of New York, 2006 WL 2668211 [ED NY 2006]; Ximines v George Wingate High School, 2006 WL 2086483, 2006 US Dist LEXIS 50756 [2006]; see also Matter of P.I. v New York City Bd. of Educ., 10 Misc 3d 1073[A], 2006 NY Slip Op 50051[U] [2006].)
*853 However, by order and decision of the Appellate Division, First Department, Perez (supra) was reversed with the following observations:
“While the 2002 amendments to the Education Law (L 2002, ch 91) providing for greater mayoral control significantly limited the power of the Board of Education (see Assembly Mem in Support, 2002 McKinney’s Session Laws of NY, at 1716-1717), the City and the Board remain separate legal entities. (Gonzalez v Esparza, 2003 WL 21834970, *2, 2003 US Dist LEXIS 13711, *5 [SD NY 2003] [changes in statutory scheme regarding interplay between Board and City best described as ‘political’]; see also Gold v City of New York, 80 AD2d 138, 140 [1981]). The legislative changes do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts (see Gonzalez, 2003 WL 21834970 at *2, 2003 US Dist LEXIS 13711 at *5)” (41 AD3d 378, 379 [2007] [emphasis added]).
The Red Flags
Despite the confusion caused by all of the above, there were red flags (even after the 2002 amendments) which should have alerted both the bench and the bar that the issue of the responsibility for torts committed on school property by Board employees was, at the very least, “unclear.” For example, the 2002 amendment to Education Law § 2590-b begins with the caution that “The board of education of the city school district of the city of New York is hereby continued.” (L 2002, ch 91, § 6, adding Education Law § 2590-b [1] [a] [emphasis added].) In addition, in the body of that provision, it also states that “all . . . appointed members shall serve at the pleasure of the appointing authority and shall not be employed in any capacity by the city of New York.” (Id. [emphasis added].) Most importantly, provisions of section 521 of the NY City Charter (which provides that all school property “shall be under the care and control of the Board of Education” [subd (c)] and that “suits in relation to such property shall be brought in the name of the said Board of Education” [subd (b)]) were not amended and continue as binding statutory mandates. Thus, it is quite understandable that the Appellate Division in Perez (supra) found and held that “the City and the Board remain separate legal entities . . . [and t]he legislative changes do not abrogate the statutory scheme for *854 bringing lawsuits arising out of torts allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts.” (41 AD3d at 379.)
The General Municipal Law
A Notice of Claim — A Condition Precedent
A notice of claim is a statutory device that creates a condition precedent to the right to bring an action (see General Municipal Law § 50-e [3]; § 50-i; Education Law §§ 2562, 3813), and said notice must be served “within ninety days after the claim arises.” (General Municipal Law § 50-e [1] [a].) This statutory precondition serves “to enable municipalities to pass upon the merits of a claim before the initiation of litigation and thereby forestall unnecessary lawsuits” (Alford v City of New York, 115 AD2d 420, 421 [1st Dept 1985], affd 67 NY2d 1019 [1986]). Thus, section 50-e (3) of the General Municipal Law (as distinguished from the requirements for permission to serve a late claim pursuant to section 50-e [5], [6] and [7]) is strictly construed. As stated by the Court of Appeals:
“[W]e have long held, ‘statutory requirements conditioning suit [against a governmental entity] must be strictly construed’. This is true even where the Department ‘had actual knowledge of the claim or failed to demonstrate actual prejudice’. We have repeatedly rejected, and now reject again, proposals to compromise the strict statutory notice of claim requirement, because to do so would lead to uncertainty and vexatious disputes.” (Varsity Tr., Inc. v Board of Educ. of City of N.Y., 5 NY3d 532, 536 [2005] [emphasis added and citations omitted].)
Applications for Leave to Serve a Late Notice of Claim
Section 50-e (5) provides that upon application in a special proceeding or as a motion in an already pending action, the court, in its discretion, may extend the time to serve a notice of claim. Section 50-i (1) (c) cautions and requires that an “action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based; except that wrongful death actions shall be commenced within two years after the happening of the death.”
The untimely service of a notice of claim, without leave of the court, has been held to be a nullity (Kokkinos v Dormitory Auth. of State of N.Y., 238 AD2d 550 [2d Dept 1997]), but an application made even after the commencement of an action is permis *855 sible provided that the application, as well as the action, are commenced within the one year and 90 day statute of limitations. (See § 50-e [5]; § 50-i [1]; De La Cruz v City of New York, 221 AD2d 168 [1st Dept 1995].) Therefore, although an application can be made before or after the commencement of an action, if there is a failure to seek leave to serve a notice of claim within the one year and 90 days, the court is required to dismiss the complaint. (Hall v City of New York, 1 AD3d 254 [1st Dept 2003]; Armstrong v New York Convention Ctr. Operating Corp., 203 AD2d 170, 170-171 [1st Dept 1994] [“The court lacked the discretion to excuse plaintiffs’ late service of their notice of claim since their motion for such relief was not made until after the one-year Statute of Limitations had run, and it makes no difference that plaintiffs, without court leave, had served the notice of claim within the limitations period”].)
Only a tolling can extend the time, otherwise the above limitations period is inflexible. (For tolling, see CPLR 208, 210; Kotlyarsky v New York Post, 195 Misc 2d 150 [2003]; Pierson v City of New York, 56 NY2d 950 [1982]; Abad v New York City Health & Hosps. Corp., 214 AD2d 342 [1st Dept 1995]; Lopez v Lincoln Hosp., 272 AD2d 275 [1st Dept 2000].)
Remedial Amendment/Liberal Construction
Prior to 1976 many courts construed General Municipal Law § 50-e rigidly thereby depriving claimants of the right to commence a tort action against public entities despite the merit of the claim and the severity of the claimant’s injury. In 1976 a remedial amendment to section 50-e was proposed and adopted by the legislature. The committee that proposed said amendment (Committee to Advise and Consult with the Judicial Conference) explained that “[i]t is intended that older judicial decisions construing the provisions of section 50-e rigidly and narrowly will be inapplicable as a result of these remedial amendments, which will enable the courts to apply these provisions in a more flexible manner to do substantial justice.” (14th Ann Rep of Jud Conf on CPLR, reprinted in 21st Ann Rep of NY Jud Conf, ch 6, at 278, 288 [emphasis added].) In addition, in the published memorandum submitted in support of the said legislation, it was emphasized that:
“These amendments introduce a degree of flexibility long needed in this area of law without subverting the basic purposes of the notice of claim provisions. It is intended that these remedial amendments will overrule older decisional law which construed rigidly *856 and narrowly the provisions relating to late filing, and will enable the court to construe these provisions liberally to do substantial justice.” (Mem of Jud Conf, 1976 NY Legis Ann, at 9 [emphasis added].)
Subsequent to enactment of this remedial legislation, courts have (almost) uniformly recognized that the Judiciary has a mandate to liberally construe its provisions; and courts have been provided with sufficient discretion to afford greater flexibility in granting leave to serve a notice of claim after the 90-day period has expired, as long as the application is made within the year and 90 day limitations period. (See e.g. Heiman v City of New York, 85 AD2d 25, 28 [1st Dept 1982]; Barnes v County of Onondaga, 103 AD2d 624, 627 [1984], affd 65 NY2d 664 [1985].)
The Relevant Factors
When an application to serve a notice of claim is made prior to the expiration of the statute of limitations, the court, in the exercise of its discretion, is required by section 50-e (5) to consider all relevant facts and circumstances, including the following factors:[3]
(1) whether the plaintiff has at least any minimally viable claim;
(2) whether plaintiff demonstrated a reasonable excuse for failure to timely serve a notice of claim;
(3) whether the public corporation or its attorney acquired actual knowledge of the essential facts constituting the claim within 90 days of its accrual or a reasonable time thereafter;
*857 (4) whether the claimant was an infant, or mentally or physically incapacitated, and the applicability of the tolling provisions; and
(5) whether the delay would substantially prejudice the municipality in maintaining its defense on the merits.
A Viable Claim
While, as a general proposition, a court entertaining a timely application to serve a late notice of claim will not examine the merits of the underlying cause of action, the motion should be denied only when the claim is “patently meritless.” (Caldwell v 302 Convent Ave. Hous. Dev. Fund Corp., 272 AD2d 112, 114 [1st Dept 2000], quoting Matter of Katz v Town of Bedford, 192 AD2d 707, 708 [2d Dept 1993]; Pearson v New York City Health & Hosps. Corp. [Harlem Hosp. Ctr.], 43 AD3d 92 [1st Dept 2007] [allowed a late notice of claim to be filed in an infant’s lead poisoning case even though two years had passed since he had last been treated at the defendant’s facility].)
Reasonableness of Excuse
In determining whether a plaintiff presents a reasonable excuse for the delay in filing a notice of claim, the court is not bound to accept excuses on their face, but must determine whether they constitute a legitimate reason for failure to comply with the statutory mandate. (See e.g. Hilda B. v New York City Hous. Auth., 224 AD2d 304 [1st Dept 1996] [report of the psychologist and plaintiffs affidavit, which stated that she was unable to talk about the sexual assault until recently, accepted as a reasonable excuse]; but see F. P. v Herstic, 263 AD2d 393 [1st Dept 1999] [defendants’ evidence completely undermined expert’s affidavit that plaintiffs silent rape reaction prevented her from seeking prompt legal advice].)
Wdiile the reasonableness of the excuse for the delay may be open to question, the absence of a reasonable excuse is not necessarily fatal (see Matter of Urgiles v New York City School Constr. Auth., 283 AD2d 434 [2d Dept 2001]; Matter of Alvarenga v Finlay, 225 AD2d 617 [1996]; Diallo v City of New York, 224 AD2d 339 [1st Dept 1996]; Matter of Serrano v New York City Hous. Auth., 197 AD2d 694 [2d Dept 1993]; Matter of Morgan v New York City Hous. Auth., 181 AD2d 890 [1992]; Matter of Kurz v New York City Health & Hosps. Corp., 174 AD2d 671 [1991]).
Actual Knowledge
Receipt of actual knowledge of the facts constituting the claim within 90 days by the public corporation or its attorney satisfies *858 this factor. Note, however, that the mere filing of a report or the mere possession of a record concerning the event may not automatically satisfy the “actual notice” requirement of section 50-e if said record or report does not contain sufficient “essential facts constituting the claim.”[4] (General Municipal Law § 50-e [5]; see Williams v Nassau County Med. Ctr., 6 NY3d 531 [2006].)
Infants and Impaired Persons
As provided in section 50-e (5) a delay in serving a notice of claim which results from infancy or incapacity is a factor which the court should also consider upon an application to extend the time to serve a notice of claim. (Pearson v New York City Health & Hosps. Corp. [Harlem Hosp. Ctr.], 43 AD3d 92 [2007] [allowed a late notice of claim to be filed for an infant who has sustained lead poisoning, even though two years had passed since he had last been treated at the defendant’s facility].)
The court noted that it would be “unfair and unjust” (id. at 94) to deprive the infant of a remedy based on her mother’s ignorance of the law, and also noted that the defendant possessed medical records affording it actual knowledge of the essential facts constituting the claim.
*859 Substantial Prejudice
Section 50-e (5) expressly requires the court to consider “whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.” (Williams v Nassau County Med. Ctr., 6 NY3d 531, 539 [2006] [10 year delay in serving a notice of claim for an infant found to result in substantial prejudice]; Lefkowitz v City of New York, 272 AD2d 56 [1st Dept 2000] [11 months between the time of the accident and the making of the application was held to prejudice defendant’s ability to investigate the alleged sidewalk defect].)
Discussion
It is noted at the outset that, although the proposed notice of claim (which is annexed as an exhibit to the order to show cause) properly identifies the New York City Board of Education and the New York City Department of Education, the order to show cause per se (as well as all pleadings in this case) identify only the City of New York as a defendant; and no application has been made to amend all documents to name the proper entities as defendants. Moreover, the order to show cause only provides for service upon the City of New York — and not upon the proper entities. Thus the Department and Board still do not technically appear in this proceeding, despite the fact that the order to show cause was served at 100 Church Street upon the Corporation Counsel which, pursuant to the aforesaid “New Court Notice” now serves as counsel, agent and sole representative for the Department/Board of Education as well as counsel and authorized agent for service for the City of New York.
Is the above failure to name the proper party in the order to show cause and to serve the Corporation Counsel in its capacity as agent and sole representative for the Department and Board a fatal defect which deprives this court of jurisdiction over said entities (see Varsity Tr., Inc. v Board of Educ. of City of NY., 5 NY3d 532 [2007]; Orellana v City of New York, 203 AD2d 542 [1994]; Matter of Eso v County of Westchester, 141 AD2d 542 [2d Dept 1988]; Rogers v New York City Hous. Auth., 169 AD2d 763 [1991]; Salner v City of New York, 12 AD2d 771 [1961]); or, based upon the totality of circumstances presented, is it a “mistake, omission, irregularity or defect made in good faith” which “may ... in the discretion of the court” “be corrected, supplied or disregarded” as provided by General Municipal Law § 50-e (6)? As in Eso and Rogers (supra), no action or special *860 proceeding is yet pending against the Department and Board of Education; and even if this court were to consider the order to show cause herein as an appropriate special proceeding, it named, and was served on, the wrong party defendant and thus it appears that this court lacks jurisdiction. (Varsity Tr., Inc. v Board of Educ. of City of N.Y., 5 NY3d 532 [2007]; Matter of Eso v County of Westchester, 141 AD2d 542 [1988].) As observed in Eso:
“Even if this motion were to be treated as a special proceeding, the respondent did not effectuate service in strict compliance with CPLR 403 (c) and 311 (4). In order to obtain jurisdiction over the county or the County Police, he was required to serve a county official designated under CPLR 311 (4) by personal delivery of the papers to such an official (see, CPLR 403 [c]). Service of the notice of motion by mail upon a law firm which represented the county in various actions does not constitute service upon the proper official” (141 AD2d 542, 543 [1988] [citations omitted]).
Since the Corporation Counsel was served in its capacity as attorney for the City (and not in its role as agent and sole representative of the Department and Board) it can be found that strict compliance with statutory service requirements was not effectuated; and it most likely would be held that any attempt by this court to “disregard or correct” these defects would be an abuse of discretion. This court has no desire to risk placing plaintiffs in another “Catch-22” which would most likely result in a reversal and further prejudicial delay for all concerned parties.
The court has considered all relevant factors recommended by General Municipal Law § 50-e (5) and finds that plaintiffs have demonstrated a reasonable excuse for failure to timely serve a notice of claim and have sufficiently established all other criteria necessary for this court to allow a late service of the notice, at least as to the infant plaintiff who has been insulated from the running of the statute of limitations by the tolling provisions of the CPLR. (See CPLR 208; Henry v City of New York, 94 NY2d 275 [1999] [statute of limitations tolled for the period of infancy, and toll not terminated by the acts of the guardian in failing to timely take steps to pursue infant’s claim].) The court finds, in addition, that the Department and Board of Education had timely actual notice of the facts constituting the claim and that the delay in filing a notice of claim and in the commencement of *861 an action will not in any way prejudice them in maintaining a defense on the merits. Despite these findings however, the court finds itself constrained: (1) to deny plaintiffs’ application at this time, without prejudice to renewal when commenced in an appropriate manner against the proper public corporations, and (2) to grant the City’s motion to dismiss.
Although it is a close question, the court has considered and rejected the proposition that the City should be estopped from asserting that it was an improper party. Although during the pretrial discovery phase of these proceedings, the City via the Corporation Counsel did represent Board employees and take possession of school equipment, and did not raise the “improper party” defense in its answer, and did not even clearly deny ownership and control of the premises, the court does not believe that the City’s conduct was calculated to mislead or discourage the plaintiffs from serving a timely notice of claim (see Campbell v City of New York, 203 AD2d 504, 505 [1994], supra). In light of the confusion which followed the enactment of chapter 91 of the Laws of 2002 and the cases interpreting same, this court will give the City the benefit of the doubt on the estoppel issue.
Conclusion
The motion by plaintiffs is denied, with leave to renew, as indicated above. The cross motion by the defendant City is granted.

. Education Law § 3813 (1) states:
“1. No action or special proceeding, for any cause whatever, except as hereinafter provided, relating to district property or property of schools . . . shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school. . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. In the case of an action or special proceeding for monies due arising out of contract, accrual of such claim shall be deemed to have occurred as of the date payment for the amount claimed was denied.” (Emphasis added.)
Education Law § 2562 states:
“1. No action or special proceeding, for any cause whatever, shall be prosecuted or maintained against a board of education of a city having a population of four hundred thousand or more, unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the said board of education for adjustment, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.”

. The By-Laws of the Panel for Educational Policy state specifically that: “The Panel for Educational Policy is a part of the governance structure for the City School District of the City of New York, subject to the Laws of the State of New York and the Regulations of the State Department of Education. Other parts of the structure include the Chancellor, superintendents, community school boards, principals, and school leadership teams. Together this structure shall be designated as the Department of Education of the City of New York” (http://schools.nyc.gov/NR/rdonlyres/ F3911C9F-C520-49A8-B5A0-547A0E3BD41E/1114/Bylaws 102102.pdf [emphasis added]; see also Varsity Tr., Inc. v Board of Educ. of City of N.Y., 5 NY3d 532, 534 n 1 [2005]).

. Section 50-e (5) provides in relevant part that:
“In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.”

. The listing of a sidewalk defect on a Big Apple map filed nine months before an accident did not suffice to give the City actual knowledge of the essential facts or nature of the claim. (Matter of Konstantinides v City of New York, 278 AD2d 235 [2d Dept 2000].) The filing of a police report does not, in itself, establish actual notice.
“To adopt plaintiffs position that such circumstances gave defendant timely actual notice of the facts constituting his claim would be to substitute police reports for notices of claim in every instance, mandate that defendant investigate every possible cause of action that might be suggested in an accident report, disregard the prejudice caused by the lost opportunity to conduct a prompt investigation” (Olivera v City of New York, 270 AD2d 5, 6 [1st Dept 2000]; see also Walker v New York City Tr. Auth., 266 AD2d 54, 55 [1st Dept 1999] [police “aided” report did not connect the occurrence with any negligence by defendants, and thus did not constitute notice]; but see Matter of Cicio v City of New York, 98 AD2d 38, 39-40 [1983] [since defendants were in receipt of an accident report and an aided report, which indicated that there were no witnesses to the accident, filled out by the police officer who responded to the accident scene, they had, from the outset, notice of the facts upon which plaintiffs claim is premised]).
Nor will the making of an accident report by defendant’s employee invariably establish actual knowledge of the essential facts constituting the claim within 90 days of the occurrence (see Washington v City of New York, 72 NY2d 881 [1988]).