[855 NYS2d 530]

CAMELLA PRICE et al., Appellants, v NEW YORK CITY BOARD OF EDUCATION, Doing Business as NEW YORK CITY DEPARTMENT OF EDUCATION, et al., Respondents.

First Department, April 22, 2008

278

**APPEARANCES OF COUNSEL**

*Norman Siegel*, New York and *Lovells, LLP*, New York City (*David Leichtman* of counsel), and *Morgan, Lewis & Bockius*

*LLP,* New York City (*Carolyn W. Jaffe, Alan J. Neuwirth, Shira R. Rosenblatt, Jason H. Casell,* and *Namita E. Mani* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Alan G. Krams* and *Kristin M. Helmers* of counsel), for respondents.

*Stroock & Stroock & Lavan LLP,* New York City (*Alan M. Klinger, Ernst H. Rosenberger* and *Beth A. Norton* of counsel), for United Federation of Teachers, amicus curiae.

## OPINION OF THE COURT

MAZZARELLI, J.P.

This appeal requires us to balance the interests of the New York City Department of Education (the Department) in maintaining order and discipline in its schools with the concerns of parents and guardians for their children's well-being.

In September 2005, the Department, as required by Education Law § 2801 (2), issued its Discipline Code or Citywide Standards of Discipline and Intervention Measures "for the maintenance of order on school property." The Code enumerated various "infractions," rating them in five levels ranging from "Insubordinate Behaviors" (Level 1) to "Seriously Dangerous or Violent Behavior" (Level 5).[1] One of the Level 1 infractions was identified as "Bringing prohibited equipment or material to school without authorization (e.g., cell phone, beeper)."

Also in September 2005, current Chancellor Joel I. Klein issued Regulation A-412, which, according to its statement of intent, "sets forth the responsibilities of school staff for maintaining safety and security in the schools." The regulation specifically provides that "Beepers and other communication devices are prohibited on school property, unless a parent obtains the prior approval from the principal/designee for medical reasons." The Chancellor was authorized to implement the regulation by Education Law § 2554 (13) (a), which imbues all city boards of education in the state with the authority to "prescribe such regulations and by-laws as may be necessary . . .

---

1. The disciplinary consequences for a Level 1 infraction range from admonishment to removal from the classroom by a teacher. For a Level 5 infraction a student faces at minimum a suspension, and, for students at least 17 years old, a maximum penalty of expulsion.

for the general management, operation, control, maintenance and discipline of the schools . . . ."[2]

While cell phones were not specifically identified as contraband until the issuance of the 2005 Discipline Code, they would arguably have been prohibited in city schools earlier. In 1988 then-Chancellor Richard Green had instituted a system-wide ban on beepers, pagers and "other similar personal communication devices." However, it was not until April 2006 that the Department began to enforce the ban. On April 13, 2006, the Department announced that students at certain middle and high schools would be scanned by mobile metal detectors prior to entering the school. The intended target of the scans was "weapons and dangerous instruments such as firearms, knives and box cutters." Although a small number of weapons were found, thousands of cell phones were detected. The Department confiscated the phones, relying on its Discipline Code and Chancellor's Regulation A-412.

In response, the Association of New York City Education Councils, an advocacy group for parents of city public school students, circulated a petition calling for a moratorium on the confiscation of cell phones. The petition asserted that the cell phone ban "[i]nfringes on the rights of parents seeking to provide cellular phones as a tool of protection for their child(ren)." It further claimed that the policy "[i]ntervenes in the ability of parents to communicate with their children and vice versa." By July 12, 2006, 3,185 individuals had signed the petition.

On May 2, 2006, the Executive Board of the United Federation of Teachers unanimously passed a resolution supporting the prohibition of cell phone use by students while on school grounds but calling for an end to the ban on possession. The resolution described cell phones as a "lifeline for many parents and students." In June 2006, the City Council Committees on Education and Public Safety met to consider the need for the ban. The Education Committee subsequently proposed a resolution calling for a moratorium on the ban pending a public hearing in each school district to find a compromise solution. Despite these and other efforts on the part of concerned groups to reverse the prohibition against possession of cell phones, the

---

2. Although section 2554 expressly excepts "the city board of the city of New York," Education Law § 2590-h (17) confers on the city schools' Chancellor the powers and duties described in section 2554.

Department and the Office of the Mayor made it clear that they would not reconsider the ban.

This hybrid proceeding was commenced in July 2006. The petitioners (collectively, the Parents) are individual parents opposed to the cell phone ban and the Chancellor's Parent Advisory Council (CPAC), an organization created pursuant to Chancellor's Regulation A-660. CPAC is a group of elected parent leaders from each of the City's community school districts, 10 regional high school districts, an alternative high school district and a citywide special education district. It represents parents of students in all city public schools.

The first two causes of action seek review of the ban pursuant to CPLR article 78. In the first cause of action the Parents allege that in enacting the pertinent provisions of the Discipline Code and Regulation A-412, the Chancellor exceeded the authority granted him by Education Law § 2554 (13) (a) as they were not necessary for the "general management, operation, control, maintenance and discipline of the schools." In the second cause of action they claim that in implementing the ban the Department acted arbitrarily and capriciously. This they assert is because it ignored the fact that "cell phones are a vital communication tool and security device that New York City public school students and their families rely upon during students' commute to and from school and after-school activities." The Parents also assert that the ban was overbroad and devoid of legitimate purpose in light of the alleged existence of "numerous more narrowly tailored alternatives."

In the third and fourth causes of action it is alleged that the ban violated the New York State and United States Constitutions as it infringed on parents' fundamental right to provide for the care, custody and control of their children. According to the Parents, the ban effectively renders parents unable to communicate with their children, thus depriving them of that liberty interest.

Each of the individual Parents submitted an affidavit in support of the petition detailing his or her child's daily routines and explaining how he or she relies on the child possessing a cell phone. Several of the Parents described their children's lengthy commutes to and from school and after-school activities by public transportation. They stated that often portions of those commutes require the children to walk in the dark through dangerous neighborhoods, where working pay phones are scarce. They asserted that they rely on their children's cell

phones to keep track of their whereabouts through each step of the journey or to coordinate meeting them at the bus or subway stop at the end of the trip home. They claimed that the cell phones are vital in the event of a disruption in transportation service or some other occurrence which requires parents to contact their children. Other Parents recounted instances where their children used their cell phones, or could have if they were not banned from possessing them, to call for help after being assaulted or threatened by other children. Some invoked their experiences on September 11, 2001.

In opposition to the petition, the Department argued that the dispute was nonjusticiable because the cell phone ban was a product of executive-branch decision making so fundamental as to be outside the reach of judicial review. The Department further argued that the Parents failed to satisfy the condition precedent required by Education Law § 3813 (1) of serving a written notice of claim.

As to the merits, the Department claimed that it was justified in implementing the ban in the exercise of its sound discretion because cell phones threaten order in the schools. In the 2005-2006 school year, the Department stated, 2,168 incidents involving cell phones on school property were reported. Emphasizing the various uses for cell phones besides placing and receiving calls, the Department cited instances in which cell phones were used for seriously disruptive, in addition to some criminal, purposes. For example, the Department stated that students have used the camera function of cell phones to take and exhibit pictures with inappropriate sexual content and to use such pictures to harass others, including school personnel. According to the Department, cell phones have also been used to facilitate cheating on exams.

The Department detailed how cell phones have been abused by students. For example, students have called friends to rally them for assistance in a fight. They have used them to call other students to threaten and intimidate them. They have placed crank calls to teachers and called 911 as a practical joke. The Department acknowledged the convenience cell phones provide parents and guardians who want a means of communication with their children at all times. However, the Department argued that the ban was necessary to maximize the amount of time available for teaching. The Department further noted that it had considered the compromise solutions offered by some parents, such as the provision of lockers or a check-

and-return system, but determined that they were "administratively cumbersome, prohibitively expensive and virtually impossible to implement."

Finally, the Department disputed the Parents' claim that the cell phone ban interfered with their fundamental right to provide for the care, custody and control of their children. To the extent that any constitutional rights were implicated, the Department posited that a rational basis analysis was required, not strict scrutiny as advanced by the Parents. The Department argued that the ban easily passed the rational relationship analysis, as education is a legitimate state interest and the ban was reasonably related to the advancement of that interest.

After they filed their petition, but before the Department interposed its answer, the Parents moved for leave to take discovery pursuant to CPLR 408. They also sought confirmation that they could take discovery as of right regarding the constitutional claims. The Parents argued that discovery was necessary to determine whether the Department had empirical evidence to support its position that cell phones represented such a threat to order in the schools that a complete ban on their possession was necessary. The Department opposed the motion on the grounds that, even if the court reached the merits of the Parents' claims, the Department had amply demonstrated in its opposition to the petition why the ban was justified. Any further evidence, the Department argued, would be "superfluous and wasteful."

The court, in an order entered June 18, 2007 (16 Misc 3d 543 [2007]), dismissed the petition. Initially, the court rejected the Department's position that it had no subject matter jurisdiction. Calling the nonjusticiability argument "almost frivolous," it noted that article 78 has been invoked countless times to challenge determinations of the State Commissioner of Education and other educational entities (id. at 551). The court further found that the written notice of claim required by Education Law § 3813 (1) did not apply to claims strictly for declaratory relief.

The court found "rational" the Parents' concerns about their children being "incommunicado" during the school day (id. at 559). It noted that, even though cell phones were not widely owned until relatively recently, parents and children had altered their behavior to rely on them. Nevertheless, the court held that the Department had demonstrated a proper basis for the cell phone policy and concluded that if the schools were required

to enforce a ban on cell phone use, their pedagogical mission would be undermined by the time spent confronting and disciplining students. It further found that the Parents had failed to advance a "practically viable universal alternative" to the ban, and that this was an additional rational basis for the ban (*id.* at 561).

The court also rejected the Parents' constitutional claims, holding that the cell phone ban was central to the schools' educational mission. The court further found that the right extended to parents under the Fourteenth Amendment to the United States Constitution to provide for the care, custody and control of their children did not embrace a right to communicate with children by cell phone. Accordingly, the court declined to engage in either a strict scrutiny or rational relationship analysis of the cell phone ban.

Finally, the court denied the Parents' motion for discovery. With respect to the article 78 proceeding, the court found that the issues could be resolved without discovery. It further held that discovery was irrelevant to the declaratory judgment causes of action because, "[i]f petitioners' constitutional rights are violated, it hardly matters why or with what basis of support the Cell Phone Rules were adopted" (*id.* at 550).

On appeal, the Parents argue that the court failed to address and rule upon their claim that the cell phone ban is overbroad and exceeds the Chancellor's statutory authority. In addition, they assert that the court improperly based its ruling on facts not in the record and on justifications for the cell phone policy allegedly raised by the Department for the first time in its answer to the petition. They further claim that the court mischaracterized and paid short shrift to their proposed alternatives to the ban.

The Parents argue that the ban violates the Fourteenth Amendment and article I, § 6 of the NY Constitution because it infringes on their fundamental right to provide for the care, custody and control of their children. They further claim that the court erred in not subjecting the ban to any constitutional analysis, much less strict scrutiny, which they claim is the appropriate standard. Finally, the Parents claim that the court abused its discretion by denying their motion for discovery because the Department's opposition depended on factual assertions which could only be challenged after the Department fully disclosed its basis for them.

In an amicus brief, the United Federation of Teachers (UFT) supports the Parents' position that the Chancellor exceeded his

authority in promulgating the ban. The UFT claims that the teachers' responsibility to care for students while they are at school gives them a vested interest in the students' well-being after they are released from school. It argues that several studies have concluded that how much a child achieves academically directly correlates to how much external stress the child has in his or her life. Thus, it asserts that if children have cell phones, they will worry less about their safety outside of school and consequently perform better in school. Finally, the UFT posits that enforcing a possession ban will require more of the school faculty than would enforcing a use ban, since, it alleges, the reality is that children are bringing their phones to school notwithstanding the possession ban.

In response, the Department repeats its position that this dispute is nonjusticiable because it involves executive-branch decision making at a fundamental level. It claims that, in any event, the court gave the proper deference to the Chancellor's role in administering the schools and correctly ruled that the Department had a rational basis for implementing the ban because of the Chancellor's concern about discipline. It further argues that because the disputed action is a broad policy enactment, the court was not limited to consideration of the rationale employed by the Chancellor at the time he implemented the ban.

As for the Parents' constitutional claims, the Department argues that, in the context of education, administrative decisions which direct the manner in which children are educated are not subject to strict scrutiny because they do not infringe upon any fundamental rights. It distinguishes those cases confirming that parents have a fundamental right to provide for the care, custody and control of their children as involving government action "orders of magnitude beyond the intrusion claimed here." The Department further argues that even where the fundamental right is implicated by government action, only the rational-basis analysis need be applied. The Department claims that the cell phone ban easily passes the rational-basis test.

Finally, the Department argues that the Parents' appeal from the court's decision on the discovery motion should be dismissed as it is from a nonappealable interlocutory order. Moreover, it claims that the motion was properly decided as the Parents failed to demonstrate that the discovery sought was likely to advance their prosecution of the proceeding.

■ We find that the Parents' challenge to the rationality of the cell phone policy is nonjusticiable. "[A]bsent a showing of an ultra vires act or a failure to perform a required act, the decision of a school official involving an inherently administrative process, which is uniquely part of that official's function and expertise, presents a nonjusticiable controversy" (*Matter of Parent Teacher Assn. of P.S. 124M v Board of Educ. of City School Dist. of City of N.Y.*, 138 AD2d 108, 113 [1988]). This notion derives from the doctrine of separation of powers and the courts' disinclination to be perceived as overseeing the discretionary affairs of the political branches of government (*see Matter of Abrams v New York City Tr. Auth.*, 39 NY2d 990, 992 [1976]). Thus, "courts may not under the guise of enforcing a vague educational public policy, suggested to it, assume the exercise of educational policy vested by constitution and statute in school administrative agencies" (*Matter of New York City School Bds. Assn. v Board of Educ. of City School Dist. of City of N.Y.*, 39 NY2d 111, 121 [1976]).

The court's statement that "[d]ecisions of school boards and other educational entities have been so routinely subject to review by the Courts under CPLR article 78 so as to make [the Department's] contention [that this dispute is nonjusticiable] almost frivolous" (16 Misc 3d at 551) is undermined by the cases it cites in support of that proposition. For example, in *Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills* (4 NY3d 51 [2004]), the Court of Appeals found it proper to interject itself into a dispute concerning whether the State Education Commissioner properly determined that teaching assistants were teachers for purposes of tenure only after noting that it was "faced with the interpretation of statutes and pure questions of law" (*id.* at 59). In *Matter of Davis v Mills* (98 NY2d 120 [2002]), the Court in addressing whether a teacher had a right pursuant to Education Law § 2510 (1) to be placed in a newly created position that replaced her former position, deferred completely to the Commissioner's decision, stating that "[i]t is for the Commissioner in the first instance, and not for the courts, to establish and apply criteria to govern the selection and retention of qualified educators and staff" (*id.* at 125). Indeed, the Court of Appeals has specifically noted that "the myriad of tenure, racial discrimination, and teacher dismissal cases heard by our courts" are justiciable even though they "touch, often deeply, educational policies, because discrete law issues are raised which are wholly apart from matters of policy"

(*James v Board of Educ. of City of N.Y.*, 42 NY2d 357, 365-366 [1977]). Here, the Chancellor's decision to ban possession of cell phones was wholly a matter of policy and no discrete issues of law are implicated.

The Parents argue that review of the cell phone policy is permissible because the policy is ultra vires the Chancellor's authority (*see Matter of Parent Teacher Assn. of P.S. 124M* at 113). However, we agree with the court below which, in considering the policy on the merits, found that it was not. The Chancellor's determination that a mere ban on cell phone use would not be sufficiently effective was not irrational. It is now routine before theater, movie and other cultural presentations attended by adults for patrons to be asked to turn off their cell phones. Even then there is no guarantee that the cell phone of an inattentive person will not ring at an inopportune time. While the vast majority of public school children are respectful and well-behaved, it was not unreasonable for the Chancellor to recognize that if adults cannot be fully trusted to practice proper cell phone etiquette, then neither can children.

Of course, the cell phone activity identified by the Department as threatening discipline in the schools goes far beyond the occasional errant ring. The very nature of cell phones, especially with regard to their text messaging capability, permits much of that activity to be performed surreptitiously, which the Chancellor rationally concluded presents significant challenges to enforcing a use ban. Certainly the Department has a rational interest in having its teachers and staff devote their time to educating students and not waging a "war" against cell phones.

The Parents' comparison of the ban on cell phone possession to school dress regulations that have been struck down is strained. No school official could argue today that a blanket prohibition of slacks for female students furthers safety, order and discipline in the schools (*see Matter of Scott v Board of Educ., Union Free School Dist. No. 17*, 61 Misc 2d 333 [1969]). However, it cannot be denied that the use of cell phones for cheating, sexual harassment, prank calls and intimidation threatens order in the schools. The Parents' attempt to analogize the prohibition on hats addressed in *Appeal of Pintka* (33 Ed Dept Rep 228 [Decision No. 13,034] [1993]) falls similarly short. There, the State Education Commissioner determined that a school board's ban on the wearing of hats anywhere in the school building was overbroad because hats only threatened decorum when worn inside the classroom. For obvious reasons,

a ban on hats in the classroom is easily enforced, without a need to extend it elsewhere. As the Department has demonstrated, a ban on possession of cell phones is necessary because a ban on use is not easily enforced.

The Parents' argument concerning the existence of limited-use cell phones does not further their position that the Chancellor acted ultra vires his authority. The Parents describe cell phones which have no other capabilities than making and receiving calls and assert that certain phones permit parents to restrict the numbers children can call and from which they can receive calls. They claim that these phones can be programmed to be operative only during certain times of the day. The Parents fail, however, to demonstrate that such telephones are widely available and owned by students. Furthermore, the Parents offer no way of assuring that the phones would uniformly be used in the manner necessary to guarantee that school decorum will not be compromised.

The Parents take issue with the court acceptance of the Department's representation that the financial costs and administrative burdens of installing lockers for the phones was too great. However, here the court properly recognized that the courts have no place in disputes which necessarily involve allocation of public resources. Indeed, courts are loathe to interfere with a governmental agency's ordering of priorities and allocation of finite resources (*see Jiggetts v Grinker*, 75 NY2d 411, 415 [1990]). To inquire into whether the Department could afford to install lockers, or take other steps to accommodate the Parents' desire for the children to possess cell phones, would constitute judicial usurpation of a matter strictly reserved to the Chancellor.

Questions of justiciability aside, we are not unsympathetic to the Parents' wish to be secure in the knowledge that they can reach their children, or be reached by them, in the event of a private or public emergency. However, we note that Regulation A-412 expressly authorizes schools to permit a child to possess a cell phone if he or she has a medical reason. Thus, children who are legitimately predisposed to physical and/or psychological issues will be able to have a cell phone to reach their parents when not in school. We can think of no reason why the Department would not permit schools to entertain reasonable applications for exemptions to the policy which do not necessarily rely on medical issues but involve equally compelling situations. For example, one of the Parents asserted in an affidavit that her

daughter was being "stalked" by another student. If a parent establishes that her child is in a similar situation, the school has the ability to extend permission to the child to carry a cell phone. We further recognize that not every situation in which parents would wish to contact or be reached by their children by cell phone can be foreseen.

Ultimately, while the Parents present cogent reasons why they would like their children to carry cell phones during the school day, our role is not to choose between two legitimate but competing interests. Because the cell phone policy was within the Department's power, judicial interference is not warranted (*Matter of New York City School Bds. Assn.*, 39 NY2d at 121).

Finally, even if it had been appropriate for the court to consider the rationality of the cell phone ban on the merits, it did not exceed the bounds of what it was permitted to consider in determining whether the policy was rational. The cases which the Parents rely on in support of their argument that the court was limited to considering the rationale supporting the policy at the time the policy was implemented each involved review of administrative determinations after an agency proceeding in which the petitioner had an opportunity to be heard and to submit evidence (*see Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662 [1997] [review of determination that teachers were not entitled to retroactive membership in the New York State Teachers' Retirement System]; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753 [1991] [review of civil servant's dismissal from position]; *Matter of Aronsky v Board of Educ., Community School Dist. No. 22 of City of N.Y.*, 75 NY2d 997 [1990] [review of teacher's termination for reasons of misconduct]). The purpose behind the rule articulated in these cases, that the reviewing court may not consider facts other than those relied on by the agency in making its determination, is to "permit intelligent challenge by a party aggrieved" (*Matter of Simpson v Wolansky*, 38 NY2d 391, 396 [1975]).

These cases are inapposite because here, the challenge is not to an administrative determination made after the Parents had an opportunity to be heard. Rather, it is to a policy made by the Department pursuant to statute. Thus, the standard of review is even more limited than if this were a challenge to an administrative determination. Here, the court must determine only whether the regulations creating the policy are " 'so lacking in reason for [their] promulgation that [they are] essentially

arbitrary.' " (*Ostrer v Schenck*, 41 NY2d 782, 786 [1977], quoting *Matter of Marburg v Cole*, 286 NY 202, 212 [1941].) Furthermore, the record need only reveal that the regulation had a rational basis (*see Matter of Older v Board of Educ., Union Free School Dist. No. 1, Town of Mamaroneck*, 27 NY2d 333, 337 [1971]). There is no requirement that an agency must have articulated its proffered rational basis for a regulation at the time of promulgation.

The Parents' constitutional claims also fail. The alleged violations of the Fourteenth Amendment of the United States Constitution and article I, § 6 of the NY Constitution do not require the application of strict scrutiny analysis. Strict scrutiny is the standard of review ordinarily applied to determine if a state action infringes upon a "fundamental" right (*see e.g. Carey v Population Services Int'l*, 431 US 678, 686 [1977]). Such an action will only withstand strict scrutiny analysis if it is narrowly tailored to advance a compelling state interest (*id.*). The liberty interest alleged to be at stake here, parents' interest in the care, custody and control of their children, is "perhaps the oldest of the fundamental liberty interests recognized by" the United States Supreme Court (*Troxel v Granville*, 530 US 57, 65 [2000]). However, the right is not absolute and is only afforded constitutional protection in "appropriate cases" (*Lehr v Robertson*, 463 US 248, 256 [1983]).

For example, the right is implicated where the state seeks to dictate where and whether parents send their children to receive education (*see Wisconsin v Yoder*, 406 US 205 [1972]; *Pierce v Society of Sisters*, 268 US 510 [1925]). It has also been recognized in matters concerning parents' interest in retaining the custody of their children (*see Stanley v Illinois*, 405 US 645, 651 [1972]). In *Troxel*, the Supreme Court invoked it to strike down a Washington state court order granting petitioners the right to visit with their grandchildren (the daughters of their deceased son) over the objection of the children's mother. The Court held that the state court's

> "decisional framework . . . directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for [the mother]'s fundamental constitutional right to make decisions concerning the rearing of her own daughters" (*Troxel*, 530 US at 69-70 [citation omitted]).

In *Matter of Alfonso v Fernandez* (195 AD2d 46 [1993], *lv dismissed* 83 NY2d 906 [1994]), the Second Department held that school policy which interferes with parental decision making in a "particularly sensitive area" (*id.* at 57), such as sex, implicates the fundamental right to rear children under both the United States and New York State Constitutions. In that case, the petitioners commenced a hybrid article 78/declaratory judgment action alleging that the New York City schools Chancellor exceeded his authority, and violated parents' constitutional rights, by making condoms available to high school students upon request without giving parents an opportunity to consent or opt out. The Chancellor instituted the condom program as part of an existing HIV/AIDS education program that was created pursuant to mandate from the State Commissioner of Education. The Second Department held that the condom program implicated the fundamental right of parents to provide for the care, custody and control of their children because it forced them to "surrender a parenting right— specifically, to influence and guide the sexual activity of their children without State interference" (*id.* at 56). Applying strict scrutiny, the Court held that, while the State had a compelling interest in controlling AIDS, the condom program was not sufficiently tailored to serve that interest, since condoms are readily available from other sources and because parents could have easily been given an option to opt out (*id.* at 58).

*Alfonso* and the United States Supreme Court cases cited above collectively stand for the proposition that the state may not substitute its judgment for the judgment of parents regarding decisions that will have a *profound* effect on children's upbringing. Here, that standard is not met. By implementing the cell phone ban policy, the State is not depriving parents of the ability to raise their children in the manner in which they see fit. The ban by necessity will prevent children from calling their parents or receiving calls from them while commuting to and from school. However, scrutiny of the individual Parents' affidavits does not reveal that any fundamental child-rearing function is being taken from them.

The Parents characterize the need for cell phones when the children are outside of school as a safety issue. However, the Due Process Clause of the Fourteenth Amendment "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security" (*DeShaney v Winnebago County Dept. of Social Servs.*, 489 US 189, 195 [1989]).

The purpose of the clause is to "protect the people from the State, not to ensure that the State protected them from each other" (*id.* at 196). To the extent that the Parents argue that if children have cell phones they will be safer should an emergency arise in the school, we note that the Parents appear to be amenable to the Department installing lockers in which the children could store their phones during the day. This solution would obviously limit the students' ability to use their phones in that type of an emergency.

Even if we were to hold that a fundamental liberty interest is at stake, we would not apply strict scrutiny. First, we note that there is no clear precedent requiring the application of strict scrutiny to government action which infringes on parents' fundamental right to rear their children. In *Troxel*, even though the Court found that the parent's right to control visitation rights was fundamental, it did not articulate any constitutional standard of review. Indeed, Justice Thomas specifically noted the plurality's failure to do so in his concurrence (*Troxel*, 530 US at 80). Some courts have held that where parents invoke the right in an effort to change school curricula or disciplinary policy, rational basis review is appropriate, notwithstanding *Troxel* (*see Leebaert v Harrington*, 332 F3d 134, 141-142 [2d Cir 2003]; *Littlefield v Forney Ind. School Dist.*, 268 F3d 275, 291 [5th Cir 2001]). Of course, this case falls somewhere in between *Troxel* and those cases, because the Parents are challenging school disciplinary policy which they allege has a disparate impact on their ability to control their children outside of school.

Nevertheless, reasonable regulations that do not "directly and substantially" interfere with a fundamental right need not be strictly scrutinized (*Lyng v Castillo*, 477 US 635, 638 [1986]; *Zablocki v Redhail*, 434 US 374, 386-387 [1978]; *see also McCurdy v Dodd*, 352 F3d 820, 827-828 [3d Cir 2003] [holding that "(i)n the context of parental liberty interests . . . the Due Process Clause only protects against deliberate violations of a parent's fundamental rights—that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship"]).

The cell phone ban does not directly and substantially interfere with any of the rights alleged by the Parents. Nothing about the cell phone policy forbids or prevents parents and their children from communicating with each other before and after school. Accordingly, the only analysis that need be applied is the rational basis test. That is, the policy will stand if it is

rationally related to a legitimate goal of government (*see e.g. Reno v Flores*, 507 US 292, 303 [1993]). Here, the Chancellor reasonably determined that a ban on cell phone possession was necessary to maintain order in the schools. The goal of discipline is unquestionably a legitimate one. Accordingly, the policy withstands rational basis review and is not constitutionally infirm.

■ Finally, we grant leave to the Parents to appeal that part of the order denying their discovery motion. Upon review, we find that the court did not abuse its discretion in denying the Parents' motion for discovery. The court reasonably concluded that the Department's submissions in opposition to the petition sufficed to credibly support its determination to ban cell phone possession in the schools (*see Stapleton Studios v City of New York*, 7 AD3d 273 [2004]). Under the circumstances, the Parents' assertion that they were entitled to further inquire into whether the Department was justified in its position amounted to no more than an expression of hope insufficient to warrant deferral of judgment pending discovery (*see Voluto Ventures, LLC v Jenkens & Gilchrist Parker Chapin LLP*, 44 AD3d 557 [2007]).

Accordingly, the judgment of the Supreme Court, New York County (Lewis Bart Stone, J.), entered June 18, 2007, dismissing the article 78 proceeding and action for declaratory judgment, and denying petitioners/plaintiffs' motion for discovery, should be affirmed, without costs.

ANDRIAS, SAXE, GONZALEZ and SWEENY, JJ., concur.

Judgment, Supreme Court, New York County, entered June 18, 2007, affirmed, without costs.