[894 NYS2d 817]

In the Matter of VERONICA MONTGOMERY-COSTA, as President of Local 372, District Council 37, AFSCME, AFL-CIO, et al., Petitioners, v CITY OF NEW YORK et al., Respondents.

Supreme Court, New York County, November 4, 2009

## APPEARANCES OF COUNSEL

*Mary J. O'Connell, General Counsel,* New York City, for District Council 37, AFSCME, AFL-CIO, petitioner. *Michael A. Cardozo, Corporation Counsel,* New York City, and *Michael Best, General Counsel,* New York City, for Department of Education, respondent. *James A. Essey,* respondent pro se.

## OPINION OF THE COURT

CAROL ROBINSON EDMEAD, J.

This case represents yet another attempt by a public employer to reduce its budget gap in a struggling economy by laying off permanent workers and replacing them with less costly labor through private contracting. The replacement of employees with contractors, i.e., privatization, appears to be a growing trend, leading to litigation challenging governmental authorities' ability to meet their budgets while maintaining their existing work force.[1]

This "hybrid" CPLR article 78 proceeding and plenary action for declaratory judgment, is brought by petitioners, comprising

---

1. For purposes of this decision, familiarity with the prior proceedings, the court's decisions and orders, and other facts not reported herein is assumed.

"school aides" in P.S. 375 and I.S. 52 in Manhattan, and the President of Local 372, District Council 37, AFSCME, AFL-CIO (Union) which represents them, challenging layoffs of more than 500 school aides by the Board of Education of the City School District of the City of New York, doing business as the Department of Education (DOE), which allegedly results in the creation of a shadow class of workers performing civil service work in violation of the New York Constitution, Education Law, and fundamental principles of equity. By order to show cause, petitioners seek, inter alia, a preliminary injunction enjoining the DOE from laying off these school aides or discontinuing the health insurance for any school aide, pending final determination of this proceeding.

Respondents cross-move to dismiss the petition pursuant to CPLR 7804 (f) and 3211 (a) (2) and (7) on the grounds that: (1) this court lacks subject matter jurisdiction over the petition; (2) the petitioners failed to file a notice of claim pursuant to Education Law § 3813; (3) the City of New York and Mayor Michael Bloomberg are improper parties to this proceeding; and (4) the petition fails to state a cause of action upon which relief may be granted.

## Petitioners' Order to Show Cause

Petitioners claim that the layoff of more than 500 school aides at some of the most underserved New York City public schools, while hiring an outside contractor to employ more than 100 new teacher aides to perform the same or similar work in the wealthiest schools in New York City, constitutes bad faith, in violation of case law. While DOE claims it must cut its budget, DOE is letting a $43 million contract for computer services to provide "financial application development and support services," which do not benefit the safety and security of the City's public school children. It is alleged that the layoffs are unnecessary since DOE proposes, and thus needs, to rehire approximately 250 of the laid off school aides to help administer flu shots to school children.

Further, DOE's layoff violates article V, § 6 of the New York Constitution, which mandates that civil service appointments shall be made according to merit and fitness. Petitioners contend that by failing to comply with hiring personnel based upon merit and fitness, the teacher aides were hired in bad faith. In addition, although a city agency may retain private contractors to provide certain services, the contract cannot be a subterfuge to

circumvent the civil service requirements. Respondents have also formed a collaborative and interdependent relationship to circumvent the law.

Petitioners also argue that the School Professionals contract violates Education Law § 2590-h (4). The employment and supervision of teacher aides is a nondelegable duty of the Chancellor. The teacher aides are not "appointed" within the meaning of Education Law § 2590 because School Professionals is "solely responsible for its employees' work, direction, safety and compensation." Also, the Chancellor has a duty to appoint teacher aides in a manner that promotes equal educational opportunity for all students. Here, the employment of teacher aides within the wealthier school districts that are not facing significant layoffs of school aides, while poorer districts who are losing school aides have no supplemental teacher aides, does not promote the fiscal and educational equity of the City's students.

Petitioners also maintain that the School Professionals contract promotes favoritism, cronyism and the improvident expenditure of funds in violation of the principles of transparency and fiscal prudence under Education Law § 2590-h (36).

The School Professionals contract also violates Education Law § 3009, in that teacher aides are not "fully under the control" of a licensed or certified teacher and have been assigned school yard and lunchroom duty each day, where there is no certified teacher present at the school yard or in the lunchroom to provide "general supervision" as required. (§ 3009 [b].)

Further, the use of parent association (PA) funding under the School Professionals contract to hire core teacher aides, who are "[c]ore instructional . . . staff" assigned to support teachers inside and outside of the classroom, violates section I (K) (6) (f) (i) of New York City Department of Education Chancellor's Regulations No. A-660. Although the Chancellor's Regulation limits the use of PA funding for salaries of personnel, the salaries of these teacher aides are being funded with monies raised by PAs.

The School Professionals contract also perpetuates educational inequity and denies poor students the right to a sound basic education. School aides ensure the safety of children throughout the entire building, help children get on and off the bus, and supervise the entrances to schools, the lunchroom, the hallways, the bathrooms, and the gymnasium. School aides are the first line of defense when fights break out and are respon-

sible for watching over children who are separated after fighting with other children. Allowing wealthy parents to subsidize the staff at a small select group of schools, while allowing poorer schools to lose all of their school aides is repugnant to principles of democracy and fairness.

Petitioners further allege that they will suffer irreparable harm in that they and their family members will lose their health benefits after the layoffs, and that the balance of equities tips in their favor.

## Respondents' Cross Motions[2]

Respondents argue that this court lacks subject matter jurisdiction over the instant proceeding. Petitioners' claim that teacher aides, as outside contractors, are performing school aide work is actually an allegation of an improper employer practice which is not only subject to arbitration, but a claim over which this court lacks subject matter jurisdiction.

Further, petitioners' claims are nonjusticiable. Courts have cautioned that the judiciary lacks the authority, ability, and will to micromanage education financing, and, absent a showing of an ultra vires act or a failure to perform a required act, an inherently administrative decision, which is uniquely part of that official's function and expertise, presents a nonjusticiable controversy. Further, a challenge to staffing ratios in schools, even when tied to a specific provision of the Education Law, is inappropriate for resolution by the courts and is reserved for the Commissioner of Education. The "wisdom and efficacy" of contracting out a governmental task "is a matter for political discourse and decision and not a matter for the courts to decide." (*Matter of Roberts v City of New York*, 3 Misc 3d 549, 563 [Sup Ct, NY County 2003].) Courts cannot intrude in matters committed to those responsible for the administration of the public schools, unless there is a gross violation of public policy. DOE's decision to make expenditures to private contractors for computerized administrative tasks, which according to petitioners does not benefit the safety and security of school children, the concern for how the schools will provide a safe environment for students should the layoffs be implemented, and whether the contracting out of teacher aides provides the best quality of services for taxpayers and students, are decisions that have been entrusted by the Legislature to the discretion of

---

2. After DOE cross-moved for dismissal, School Professionals and James D. Essey cross-moved by adopting DOE's arguments.

the Chancellor. The separation of powers doctrine renders these claims nonjusticiable.

Additionally, the proceeding should be dismissed as against the City and Mayor Bloomberg. As provided for in Education Law § 2590-g (2), the City is not petitioners' employer, and the City and DOE are separate legal entities. As such, the City and Mayor Bloomberg are not proper parties to this matter. Indeed, section 385 of the New York City Charter states that the Charter does not apply to agencies headed by boards, whether appointed by the Mayor or otherwise. Further, the DOE is not a department of the City.

Finally, to the extent this court asserts subject matter jurisdiction over the petition, it must be dismissed due to petitioners' failure to comply with the notice of claim requirements for special proceedings pursuant to Education Law § 3813. Petitioners must plead and prove the filing of a notice of claim within three months after the accrual of the claims, and respondents have no obligation to plead, as an affirmative defense, petitioners' failure to comply with this statute. To have timely filed a notice of claim alleging that teacher aides improperly perform the work previously reserved to school aides (i.e., an improper practice claim), petitioners should have filed the notice of claim within three months of the accrual of petitioners' claims, i.e., three months from the May 2009 date when DOE awarded the contract at issue to School Professionals when petitioners' damages were certain and ascertainable. Since petitioners should have filed a notice of claim within three months of May 2009, and petitioners commenced this proceeding on October 14, 2009, the petition must be dismissed.

### Petitioners' Opposition to Respondents' Cross Motion

This court's October 27, 2009 interim order establishes that if all of petitioners' allegations are taken as true, and the benefit of every possible inference is afforded, that the facts as alleged fit within several cognizable legal theories. Moreover, respondents have raised new and contradictory allegations of fact that are not contained in the verified petition. This demonstrates that there are remaining factual disputes, and granting a motion to dismiss is improper.

This court has subject matter jurisdiction over petitioners' claim that the School Professionals contract violates New York Constitution, article V, § 6. In viewing the facts alleged by petitioners as true, with the benefit of every possible inference,

petitioners have established that the School Professionals contract does not meet the six-factor test set forth in case law. Petitioners have alleged that it is the DOE, and not School Professionals, who has established the salary, terms and conditions of employment, and the hiring practices of the teacher aides. If these factors have not been established through testimony to date, this only underscores the need for additional hearings, and demonstrates that dismissing the petition at this juncture is improper. More importantly, petitioners have alleged that it is the DOE, and not School Professionals, who supervises the teacher aides. Moreover, the courts have not foreclosed claims of improper contracting, even when the petitioners were public sector labor unions.

Respondents do not have an unassailable right to make decisions that violate the New York Constitution, education statutes, or Chancellor's Regulations. Decisions made by the DOE are not owed deference if such decisions require an analysis of statutory construction and legislative intent. Petitioners allege that the employment of teacher aides violates Education Law §§ 2590 and 3009, as well as Chancellor's Regulations No. A-660. These claims require an analysis of the statutory construction and legislative intent of these provisions. Therefore, no deference is owed to the decisions of the DOE.

Further, petitioners argue that petitioners have cited to provisions that compel certain acts, rather than leave them to the unfettered discretion of the Chancellor, such as Education Law § 2590-h, which commands that the Chancellor use his authority to promote educational equity, Education Law § 3009, which commands that supervision of teacher aides be provided by certified teachers, and section I (K) (6) of Chancellor's Regulations No. A-660 which limits the expenditure of PA funds. These unambiguous, clear directives, are not subject to interpretation or the discretion of the DOE and are therefore subject to judicial review. Moreover, petitioners have alleged that the district-wide decision to lay off 500 school aides will result in an unsafe school environment, in violation of students' right to a sound basic education. Affording the petitioners the benefit of all inferences from all the facts alleged, the displacement of 500 school aides and the hiring of a shadow class of contract workers in wealthy districts may be a violation of New York Constitution article XI, the mandates of Education Law §§ 2590 and 3009, and Chancellor's Regulations No. A-660. To the extent the record does not currently reflect the potential impact of these layoffs, or the ef-

ficacy of any DOE contingency plan, further hearings are necessary to elucidate these facts. Therefore, argue petitioners, granting a motion to dismiss is unwarranted as there are factual disputes that require a hearing. However, in the event the court determines that violations of the Education Law or Chancellor's Regulations are reserved for the Commissioner, petitioners will file a petition with the Commissioner.

Additionally, the Mayor and the City are proper parties to this petition, as the Mayor exercises significant control over the decisions of the DOE. Pursuant to Education Law §§ 2590-g and 2590-h, Mayor Bloomberg has significant authority over the decisions of the Chancellor of the DOE, including procurement decisions. Chapter 91 of the Laws of 2002 amended the Education Law, and provided, among other things, that the Mayor of New York has power to appoint a Chancellor who would preside over the DOE. The Mayor is also empowered to appoint the majority of the 13-member Board, known as the Panel for Educational Policy. Further, the case cited by respondents is inapplicable, as it involved a personal injury lawsuit, and under recent case law, its holding was limited to the City's lack of liability for torts.

Petitioners further argue that the failure to file a notice of claim is not grounds for dismissal. First, the notice of claim requirement is applicable only to claims against a school district's property or to demands for payment of money. In cases where the primary relief sought is equitable in nature, such as the instant petition, and monetary relief is merely incidental, the statute is inapplicable. The notice of claim provision is also inapplicable to actions seeking to vindicate a public interest, and here petitioners seek to vindicate the rights of students to have a safe school environment with adequate personnel; the interests of taxpayers to promote fiscal prudence as well as the avoidance of cronyism and favoritism; and the rights of civil servants to job security free from corruption. Petitioners further argue, in the alternative, that if Education Law § 3813 applies, the accrual of claim begins when damages "become certain and ascertainable." Although there was discussion of layoffs in June, the predicted breadth of the layoffs fluctuated greatly. The Union received official notice of the layoffs in a letter dated September 1, 2009. Contrary to respondents' assertions, the May 29, 2009 contract between the DOE and School Professionals did not put the petitioners on notice of the extent and breadth of the use of teacher aides. School Professionals responded to a request for proposals that expressly stated:

"They will provide professional services primarily in support of the educational process for a finite period of time, with a specifically delineated start and end date. The agency will not be asked to supply individuals to perform duties covered by NYCDOE regular staff."

Teacher aides, in contrast, are not performing services for a finite period of time, yet they are performing duties covered by regular DOE staff. There is nothing additional within the contract that would have alerted petitioners that it included the services of persons who worked both inside and outside of the classroom every day. Therefore, the May 29, 2009 date is irrelevant for purposes of calculating any tolling of a statute of limitations. Petitioners did not receive information from respondents concerning the extent and breadth of the use of teacher aides until October 5, 2009. As such, the accrual date in the instant case is October 5, 2009, not May 2009.

Moreover, petitioners have substantially complied with requirements of notifying respondents. The New York City Law Department is the proper agent of process for all respondents except for School Professionals. All pleadings have been properly served upon the New York City Law Department, and therefore, the DOE. Additionally, Mr. Gomez-Sanchez has affirmatively stated that he is the attorney for all respondents except School Professionals, and has appeared at all of the hearings in this matter to date.

In any event, argue petitioners, upon application, the court, in its discretion, may extend the time to serve a notice of claim. In the event this court determines that petitioners should have filed a notice of claim, petitioners seek leave to file such a claim. The 90-day time period commenced on October 5, 2009, and does not expire until January 5, 2010. Therefore, such a notice of claim would not exceed the statute of limitations. Petitioners have submitted a proposed notice of claim in opposition.

## Respondents' Reply

Respondents maintain that petitioners must submit their claim, that the teacher aides are invading a sphere exclusively performed by school aides, to the Public Employment Relations Board (PERB). The remaining claims, raised for the first time in reply, are not addressed by this court (*see infra* at 770-771).

## Discussion

## Lack of Subject Matter Jurisdiction

Contrary to respondents' arguments, this case does not cause the court to cross the Rubicon that separates questions of law from matters of educational policy.

Respondents' contentions that the court lacks subject matter jurisdiction because (1) petitioners' claim is one that alleges an improper employment practice which is subject to arbitration and not properly before this court, and (2) the policy decisions of the DOE with which petitioners take issue are nonjusticiable, are insufficient to warrant dismissal of the petition.

Here, respondents' claim that petitioners' claims amount to an improper employment practice charge oversimplifies the nature of petitioners' challenge. An improper employer practice charge is one, for example, which alleges that an employer violated Civil Service Law § 209-a (1) (d) by "unilaterally transferring exclusive bargaining unit work to nonunit employees" (*Matter of County of Erie v State of N.Y. Pub. Empl. Relations Bd.*, 12 NY3d 72, 77 [2009]; *see Matter of Board of Educ. of Union-Endicott Cent. School Dist. v New York State Pub. Empl. Relations Bd.*, 250 AD2d 82 [3d Dept 1998] [improper practice charge alleged that the school district violated Civil Service Law § 209-a (1) (d) by hiring an outside contractor to replace ballasts and lamps, which was previously performed by union employees]; *Westchester County Dept. of Pub. Safety Police Benevolent Assn., Inc. v Westchester County*, 35 AD3d 592, 593 [2d Dept 2006] [Civil Service Law § 209-a (1) (d) provides, in pertinent part, that it shall be an improper practice for a public employer to deliberately "refuse to negotiate in good faith with the duly recognized or certified representatives of its public employees"]). And, an improper labor practice claim against the DOE lies within the exclusive jurisdiction of the Public Employment Relations Board (*Westchester County Dept. of Pub. Safety Police Benevolent Assn., Inc.* at 593] [dismissing article 78 petition where petitioners alleged that the county committed an improper employer practice in violation of Civil Service Law § 209-a (1) (d)]; *Matter of City of Albany v Public Empl. Relations Bd.*, 57 AD2d 374 [3d Dept 1977] [noting that the legality of employee's dismissal allegedly based on antiunion animus/improper employer practice falls under the jurisdiction of PERB]).

■ However, although petitioners claim that the teacher aides are invading the sphere exclusively performed by school aides,

petitioners' claim implicates constitutional and statutory law, the interpretation of which is properly a matter for the courts. Further, petitioners do not solely allege that the teacher aides are performing substantially similar work as the school aides. Petitioners additionally argue that the layoffs were performed in bad faith, violated a Chancellor's regulation, and violate principles of educational equity.

Indeed, a plenary action for declaratory judgment is an appropriate manner in which to challenge the very conduct with which petitioners take issue; to challenge the displacement of workers protected by statutory laws, petitioners must file an article 78 proceeding. In this regard, *Matter of Roberts v City of New York* (3 Misc 3d 549, 563 [2003]) is instructive.

*Roberts* involved two proceedings, the first of which was entitled therein and referred to herein as "Roberts I." In Roberts I, petitioners, consisting of the executive directors of District Council 37 (DC-37), the presidents of various locals of DC-37, and one employee represented by DC-37, challenged the layoffs of 303 provisional civil service employees of the DOE. The respondents were the City, the Mayor, the DOE, and the Chancellor of the DOE. Petitioners sought to enjoin the City "from laying off Civil Service employees while contract workers perform the same or comparable work" and to enjoin the City "from using contract workers to perform the same or comparable work in place of employees represented by" DC-37 on various grounds. (*Id.* at 561.) Petitioners also sought a rescission of the separation of the employees, and reinstatement and back pay. The City then cross-moved to dismiss Roberts I on the grounds that the court lacked subject matter jurisdiction, the petition was nonjusticiable and the petition failed to state a cause of action. The specific issues framed by the court were whether, inter alia, (1) the City laid off the employees at the time welfare recipients working under the Work Employment Program (WEP) remained on the DOE payroll, and displaced regular employees with WEP employees who performed work ordinarily performed by regular employees, and (2) the City "contracted out services while laying off DOE Civil Service employees in the same comparable positions" in violation of New York Constitution, article V, § 6. (*Id.* at 554.)

The court explained that New York adopted Social Services Law § 336-c (2) (e) to prevent the displacement of workers by WEP workers, permitting the assignment of a WEP worker only where:

"(e) such assignment [of a WEP worker] would not result in (i) the displacement of any currently employed worker or loss of position (including partial displacement such as reduction in the hours of non-overtime work, wages or employment benefits) or result in the impairment of existing contract for services or collective bargaining agreements." (*Id.* at 559.)

Essentially, WEP workers could be hired to perform functions which were not being performed by ordinary employees.

Petitioners in Roberts I did not challenge the employment of such WEP workers prior to the time of dismissal of the employees, but sought to reverse their separation on the grounds that the WEP workers would or might be assigned to the work performed by the separated workers. The court concluded that although such assignments, if actually made, may have raised issues of the City's violation of Social Services Law § 336-c (2) (e), such issues were not relevant to the separation of the employees, as the remedy for a violation of section 336-c (2) (e) would be to remove the WEP workers from the improper assignment, *not to mandate the rehiring of the employees.* The court further stated that as there was no showing that the functions performed by the employees are mandated by law and cannot be performed by other permanent city employees, the City may elect not to perform the tasks performed by the separated workers. If the City, in its discretion, wants such tasks to be performed, it would have to rehire some or all of the employees or other non-WEP workers, in a manner otherwise required or permitted by law.

The court also concluded that although section 336-c (2) (e) applied to the City's employment of WEP workers and may be enforced to carry out its purposes, section 336-c (2) (e) did

*"not provide a basis for granting DC-37 the relief sought in Roberts I, i.e., the rescission of the separation of the employees. The appropriate remedy would be to commence an article 78 proceeding for declaratory and injunctive relief, identifying the specific WEP participant[s] whose assignments have violated the provisions of section 336-c (2) (e)."* (*Id.* at 560 [emphasis added].)

Rehiring of the displaced employees or rescinding the separation of the employees was unavailable to petitioners in Roberts I for alleged violations of the antidisplacement provisions under Social Services Law § 336-c (2). However, petitioners were ad-

vised that an article 78 declaratory judgment proceeding was the appropriate vehicle to argue that the assignments of WEP workers violated the antidisplacement provision of Social Services Law.

That the court also held that New York Constitution, article V, § 6 did not apply to independent contractors or their employees so as to support petitioners' request for a declaration that the contracting was arbitrary, capricious and in violation of the Constitution, does not render the instant petition dismissible. The instant petition does not solely seek to declare the School Professionals contract null and void, and reinstatement and back pay, but a declaration that the layoffs violate the Education Law and Chancellor's Regulations No. A-660.

Furthermore, the matters raised by petitioners are justiciable. The court and all sides must agree that absent violation of a constitutional or statutory duty or action by educational authorities in a judicial or quasi-judicial capacity, courts must not intrude upon matters of educational policy "committed to the professional judgment and discretion of those responsible for the administration of the public schools" (*James v Board of Educ. of City of N.Y.*, 42 NY2d 357, 359 [1977]). As in the cases cited by respondents, decisions as to how best to achieve educational standards among students clearly rest with the Chancellor, the Board of Education, and Commissioner of Education. However here, the nub of the issue is not one involving the professional pedagogic judgment of such officials. While it is true that a decision of a school official involving an inherently administrative process, which is uniquely part of that official's function and expertise, presents a nonjusticiable controversy (*see Price v New York City Bd. of Educ.*, 51 AD3d 277 [1st Dept 2008] [banning possession of cell phones by students]), the court is not restricted from reviewing a board determination where a statutory or constitutional provision is at the root of a dispute; the courts, in the latter instance, may resolve the issues of law (*see James* at 365 [acknowledging that court may decide issues of law where a statutory or constitutional provision is at the root of a dispute, but finding that measuring educational achievement was a matter committed to the professional judgment and discretion of educational officials]; *cf. Price* at 287 [declining to interfere with Chancellor's cell phone ban because such decision was "wholly a matter of policy and no discrete issues of law are implicated"]; *Matter of New York City School Bds. Assn. v Board of Educ. City School*

*Dist. of City of N.Y.*, 39 NY2d 111 [1976] [courts cannot interfere with city board's policy determination to lower hours of education instruction, which was within its administrative power to make]). Thus, where education authorities render decisions that reflect educational policies, but raise discreet issues of law, such as "tenure, racial discrimination, and teacher dismissal cases," such issues are judicially cognizable (*James* at 365-366).

What is before the court is in fact and actually a constitutional and statutory challenge to the layoffs at issue. Unlike the petitioners in *James*, petitioners here are not injecting the court into a matter involving educational policy, such as testing requirements and student educational achievement levels.

Respondents mischaracterize the petitioners' claim in order to forge a link between the line of nonjusticiability policy cases to the issues herein. For example, in *James v Board of Educ. of City of N.Y.* (42 NY2d 357 [1977]), the petitioners sought to enjoin the administration of a comprehensive reading test to public school students, claiming that the integrity of the test had been compromised by the inadvertent advance release of the test. After conducting an investigation, the Chancellor concluded otherwise and directed that the test be given. The petitioners obtained a preliminary injunction against the scheduled test on the basis of their claim that the irregularities were more widespread than the Chancellor believed, and that the test would result in the improper promotion of undeserving students. The Court of Appeals reversed, holding that the issue was "not a matter for the courts" (*id.* at 359). The court noted that it was for the Chancellor to determine "whether a particular test, under the relevant circumstances, will satisfy the statutory direction" (*id.* at 366). Even though there was evidence of irregularity beyond that found by the Chancellor, the court stated that "[w]hether or not an examination had been so compromised as to strip it of validity as a device for measuring educational achievement is a matter committed to the professional judgment and discretion of those responsible for the administration of the public schools" (*id.* at 359; *see also Matter of Ferrer v Quinones*, 132 AD2d 277 [1st Dept 1987] [holding that the Chancellor's decision to close a certain high school because of its academic deficiencies concerns a matter of educational policy and is thus nonjusticiable]; *Matter of Bokhair v Board of Educ. of City of N.Y.*, 43 NY2d 855 [1978] [whether a school system employs a sufficient number of attendance teachers to assure compliance with the Education Law is committed

to the professional judgment and discretion of those responsible for administration of public schools]; *Matter of Cole v Board of Educ., S. Huntington USFD*, 90 AD2d 419, 432 [2d Dept 1982] [absent "contentions that actions taken by the Legislature and the executive fail to conform to the mandates of the Constitutions(')" respect for the constitutional principle of separation of powers dictates judicial restraint]).

Contrary to respondents' contention, petitioners do not ask this court to substitute its judgment for that of the Chancellor as to the Chancellor's expenditure decisions. Petitioners allege that the district-wide decision to lay off 500 school aides will result in an unsafe school environment, in violation of students' right to a sound basic education (*Campaign for Fiscal Equity v State of New York*, 187 Misc 2d 1, 114-115 [Sup Ct, NY County 2001] [holding that the definition of sound basic education includes "(s)ufficient numbers of qualified teachers, principals, and other personnel . . . (and) a safe orderly environment"]). And again, petitioners' claims raised issues requiring interpretation of educational and state constitutional law.

On the one hand, the judiciary has a duty "to defer to the Legislature in matters of policymaking, particularly in a matter so vital as education financing, which has as well a core element of local control (*Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 28 [2006]). The court has "neither the authority, nor the ability, nor the will, to micromanage education financing" (*id.* at 28). On the other hand, "it is the province of the Judicial branch to define, and safeguard, rights provided by the New York State Constitution, and order redress for violation of them" (*id.*).

As to respondents' remaining arguments that petitioners failed to exhaust their administrative remedies and that they lack standing to challenge a violation under Chancellor's Regulations No. A-660, raised for the first time in reply, the court declines to address such arguments. After oral argument on petitioners' order to show cause on October 14, 2009, the court issued an order (October 15, 2009) granting a preliminary injunction staying the DOE from laying off the school aides, pending the hearing/return date (Monday, October 26, 2009) on the order to show cause. The court also directed respondents to submit their opposition to the order to show cause by Friday, October 23, 2009. On October 23rd, the court not only received DOE's opposition, but also DOE's notice of cross motion to dismiss the action. Because petitioners would not have had the

opportunity to oppose the cross motion by the time of the hearing date that Monday, the court held a telephonic conference discussing petitioners' disadvantage, and issued an order advising the parties that at the upcoming hearing, the court would only address those arguments respondents raised in response to petitioners' arguments in favor of injunctive relief, and that the court would not address the independent bases for dismissal. Based on the discussion with all parties during the telephonic conference, the court also ordered petitioners to serve their opposition to the cross motion by Wednesday, October 28th, and stated that a decision on the cross motion would be issued on Wednesday, November 4th. However, on October 29th, respondents served reply papers, arguing that the petition should be dismissed because petitioners failed to exhaust their administrative remedies and lacked standing to challenge Chancellor's Regulations No. A-660.

It is wholly disingenuous for respondents to raise such new issues in a reply, where such a reply was not requested or anticipated when the court, on a telephonic conference with all parties, scheduled further submissions on the cross motion. As the First Department explained in *Dannasch v Bifulco* (184 AD2d 415, 417 [1st Dept 1992]): "The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion." With respect to petitioners' claims in support of their petition, respondents only argued that the court lacked subject matter jurisdiction over petitioners' improper employment practice charge and petitioners' claims regarding the expenditures of the DOE. The cross motion made no mention of petitioners' challenge under Chancellor's Regulations No. A-660 as to the use of PA funding to hire core teacher aides. Thus, respondents' claim that petitioners failed to exhaust their administrative remedies as required by Chancellor's Regulations No. A-660, raised for the first time in reply, may not be considered by the court. The same holds true as to respondents' new claim that the petitioners suffered no legally cognizable harm from the alleged violations, and thus lack standing to assert claims under the Education Law, New York Constitution article XI, and Chancellor's Regulations No. A-660.

Therefore, based on the foregoing, since respondents' contention that the court lacks jurisdiction over the petition lacks merit, dismissal of the petition on this ground is denied.

## Improper Parties

■ Respondents have demonstrated that the City and the Mayor are improper parties to this action.

Education Law § 2590-g (2) provides:

"The board shall have the power and duty to: . . .

"2. for all purposes, be the government or public employer of all persons appointed or assigned by the city board or the community districts."

The Chancellor's decisions are subject to review by the Commissioner of Education, a constitutional officer, who in turn, is under the supervision of the State Board of Regents (*James*, 42 NY2d at 365, citing NY Const, art V, § 4; art XI, § 2; Education Law §§ 301, 305).

In 2002, by chapter 91 of the Laws of 2002, "the Education Law was amended so as to radically restructure the governance of the school district of the City of New York" (*Nacipucha v City of New York*, 18 Misc 3d 846, 850 [Sup Ct, Bronx County 2008]). Pursuant to the amendment, the Mayor was empowered to appoint a chancellor who would preside over a Board of Education which was to be expanded from 7 to 13 members, the majority of which were also to be appointed by the Mayor. Five Board members are selected by the Borough Presidents (*id*).

However, "[w]hile the 2002 amendments to the Education Law (L 2002, ch 91) providing for greater mayoral control significantly limited the power of the Board of Education (*see* Assembly Mem in Support, 2002 McKinney's Session Laws of NY, at 1716-1717), the City and the Board remain separate legal entities" (*Perez v City of New York*, 41 AD3d 378, 379 [1st Dept 2007], citing *Gonzalez v Esparza*, 2003 WL 2184390, *2, 2003 US Dist LEXIS 13711, *5 [SD NY 2003] [changes in statutory scheme regarding interplay between Board and City best described as "political"]).

As respondents point out, courts have dismissed claims as against the City where the City and the Board were both named, in part, on the ground that the City and the Board are separate legal entities. Yet, the distinction raised by petitioners that the cases cited by respondents involved plaintiffs seeking relief based on the negligence or tort allegedly committed by the DOE, is worth noting (*see e.g. Campbell v City of New York*, 203 AD2d 504 [2d Dept 1994] [action to recover damages for personal injuries]; *Goldman v City of New York*, 287 AD2d 689 [2d Dept 2001] [finding that City was not a proper party in an action to

recover damages for personal injuries, because although the City retains title to real property acquired for educational purposes, it has no responsibility for the care, custody, control, and safekeeping of school property; actions concerning school property must be brought against the DOE]).

For example, the First Department in *Perez v City of New York* (41 AD3d 378, 379 [2007], *lv denied* 10 NY3d 708 [2008]) dismissed a case against the City as an improper party to the proceeding after the 2002 amendments to the Education Law, but appeared to acknowledge this distinction. The court recognized that the 2002 amendments to the Education Law (L 2002, ch 91) provided for greater mayoral control and significantly limited the power of the DOE, and that the City and the Board remain separate legal entities. Notably, the court then stated that the legislative changes "do not abrogate the statutory scheme for bringing lawsuits arising out of *torts* allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts." (*Id.* [emphasis added].)

However, "[i]t is a cardinal principle of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the legislature in the absence of a clear manifestation" (*Perez* at 379, quoting *Matter of Delmar Box Co. [Aetna Ins. Co.]*, 309 NY 60, 66 [1955]).

Notwithstanding the fact that Mayor Bloomberg holds himself out as the "Education Mayor," and notwithstanding the fact that much control of the DOE has been ceded to the Mayor, he has no direct action or control over the decisions at issue herein. Likewise, the City lacks tangential involvement or responsibility for the determinations at issue herein. Therefore, the action as asserted against the City and the Mayor is dismissed.

### Notice of Claim

Education Law § 3813 (1), the notice of claim provision, states in pertinent part that

> "[n]o action or special proceeding, for any cause whatever . . . relating to district property or property of schools . . . or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded

was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

■ The notice of claim requirement of section 3813 is applicable only to claims against a school district's property or to demands for payment of money. The purpose of such notice of claim statutes is " ' "to protect municipalities against fraudulent and stale claims for injuries to person and property . . . to afford the municipality opportunity to make an early investigation of the claim while the facts surrounding the alleged claim are still 'fresh' " ' " (*Ruocco v Doyle*, 38 AD2d 132, 134 [2d Dept 1972]). As did the school board defendant in *Ruocco*, respondents here

"stress[ ] the opening phrase of the section that no action involving the 'rights or interests' of the school district may be maintained unless a verified notice of claim is served and pleaded, but it ignores the last lines of the section, which deal with the 'accrual of such claim' and with the neglect or refusal of the officer or body 'having the power to adjust or pay said claim' to make such payment or adjustment within 30 days after presentment of the notice of claim." (*Id.* at 133.)

Notably, it "is the latter language that is the foundation stone for the decisions which have held that the requirements of section 3813 are applicable only to claims against a district's property or to demands for payment of money by a district and are not otherwise applicable." (*Id.* at 133-134.) Since the petitioners seek declaratory relief and do not seek monetary damages, the notice of claim requirement does not apply. Thus, dismissal based on petitioners' failure to file the notice of claim is unwarranted.[3]

---

3. Based on *Roberts v City of New York* (*see* discussion at 767, *supra*), any relief sought for reinstatement and back pay based on a claim that the hiring of teacher aides results in the improper displacement of school aides is unavailable to petitioners in this proceeding. Nor is it established that reinstatement and back pay is available in the event petitioners prevail on their claims under Education Law and Chancellor's Regulations No. A-660. Therefore, to the extent petitioners failed to file a notice of claim for such relief, it is inconsequential, and does not warrant dismissal of the petition.

## Conclusion

Based on the foregoing, it is hereby ordered that the branch of respondents' cross motion to dismiss the petition on the grounds that (1) the court lacks subject matter jurisdiction, (2) the petitioners failed to file a notice of claim pursuant to Education Law § 3813, and (3) the petition fails to state a cause of action upon which relief may be granted, is denied; and it is further ordered that the branch of respondents' cross motion to dismiss the petition as asserted against the City of New York and Mayor Michael Bloomberg on the ground that said respondents are improper parties to this proceeding is granted.